People v Maclean (2024 NY Slip Op 01958)

People v Maclean

2024 NY Slip Op 01958

Decided on April 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 11, 2024

CR-22-2067
[*1]The People of the State of New York, Respondent,
v
Duncan Maclean, Appellant.

Calendar Date:February 14, 2024

Before:Aarons, J.P., Pritzker, Lynch, McShan and Mackey, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Mary Pat Donnelly, District Attorney, Troy (George J. Hoffman Jr. of counsel), for respondent.

Aarons, J.P.
Appeal from a judgment of the County Court of Rensselaer County (Debra J. Young, J.), rendered November 1, 2022, convicting defendant upon his plea of guilty of the crime of attempted assault in the first degree.
Defendant allegedly struck his neighbor (hereinafter the victim) in the head with a hammer in November 2017, causing physical injuries. The victim did not disclose the incident to law enforcement until June 2018, when he was interviewed by members of the Rensselaer County Sheriff's office investigating the suspicious death of defendant's wife. During that interview, the victim explained that he had a brief extramarital relationship with defendant's wife, which defendant had discovered. The victim did not pursue charges against defendant at that time, but he changed his mind in June 2020 and agreed to cooperate.
Sheriff's deputies arrested defendant in July 2020 and filed felony and misdemeanor complaints in Pittstown Town Court charging defendant with crimes in connection with his alleged attack on the victim (see CPL 100.05). Then, in May 2021, defendant was charged by indictment with attempted murder in the second degree (see Penal Law §§ 110.00; 125.25 [1]), assault in the first degree (see Penal Law § 120.10 [1]), attempted assault in the first degree (see Penal Law §§ 110.00; 120.10 [1]) and assault in the second degree (see Penal Law § 120.05 [2]). In satisfaction of the indictment, defendant pleaded guilty to first-degree attempted assault, a class C violent felony, and waived his right to appellate review. In exchange, defendant agreed to be sentenced to a prison term of six years followed by five years of postrelease supervision.
At the May 2022 sentencing conference, the People applied for an enhancement based upon defendant's responses during the presentence investigation interview. County Court adjourned sentencing to consider the People's application and whether to allow defendant to withdraw his plea. Separately, in July 2022, defendant moved to withdraw his guilty plea based upon the People's noncompliance with their automatic disclosure obligations, which motion was denied. Citing similar grounds, defendant moved in September 2022 to invalidate the People's certificate of compliance and statement of readiness and to dismiss the indictment pursuant to CPL 210.20 (1) (g) and 30.30 (1) (a), which motion the court also denied. In November 2022, the court granted the People's enhancement application and imposed an enhanced sentence of a prison term of 8½ years to be followed by five years of postrelease supervision. Defendant appeals. We affirm.
The 42-month period between defendant's alleged crime and his indictment was protracted (compare People v Regan, 39 NY3d 459, 466 [2023]), and thus it was the People's burden to establish good cause for the delay (see People v Mack, 209 AD3d 1114, 1115 [3d Dept 2022], lv denied 39 NY3d 1112 [2023]). Our review of claims that a protracted delay violated a defendant's due process right [*2]to a prompt prosecution takes account of "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (People v Taranovich, 37 NY2d 442, 445 [1975]; accord People v Regan, 39 NY3d at 465).
Considering this case "in light of all the factors as they apply to it" (People v Regan, 39 NY3d at 465 [internal quotation marks and citations omitted]), the protracted delay did not make out a due process violation. Of the 42 months that elapsed between defendant's alleged crime and his indictment, 40 of them are accounted for by the victim's initial reporting delay, the delay occasioned by the victim's reluctance to press charges, the COVID-19 executive orders suspending statutory time frames, and an adjournment granted at defendant's request. The remaining two months occurred immediately after the first COVID-19 toll expired and just before defendant's adjournment request was granted. Notwithstanding this two-month gap, the severity of the crimes with which defendant was charged, the absence of prolonged pretrial incarceration and the lack of demonstrated prejudice to the defense arising from the delay all weigh in the People's favor (see People v Decker, 13 NY3d 12, 15 [2009]). Accordingly, County Court did not err in denying defendant's motion to dismiss the indictment on this ground.
County Court also did not abuse its discretion when it denied defendant's July 2022 motion to withdraw his guilty plea based upon the People's noncompliance with statutory automatic disclosure requirements. True, the People did not timely disclose, acknowledge their possession of, or provide access to defendant's cell phone, the full extraction report generated therefrom, and his entire exchange with the victim via the Facebook Messenger application on the night of the incident (see CPL 245.20 [1] [m], [n]; 245.25 [2]; see also CPL 245.20 [1] [u] [ii]). Further, because the victim was the only other eyewitness to the alleged incident, it is reasonable to accept defendant's claim that the People's nondisclosure of Facebook messages that might have impeached the victim's credibility at trial had an impact on his decision to take their plea offer. Even so, that impact did not render defendant's plea involuntary (see People v Hewitt, 201 AD3d 1041, 1044 [3d Dept 2022], lv denied 38 NY3d 928 [2022]). Defendant admitted in his supporting affidavit that, prior to entering his plea, he had discussed with counsel that his cell phone had been seized and that he believed the phone contained "exculpatory evidence in the form of Facebook Messenger messages exchanged with the alleged victim." Thus, defendant pleaded guilty fully aware of the People's nondisclosure and the potential trial value of the undisclosed evidence, vitiating his claim that his plea was involuntarily [*3]entered.[FN1]
Finally, defendant asserts that County Court erred by imposing an enhanced sentence. We disagree. "There is no question that an enhanced sentence may be imposed on a defendant who, in violation of an express condition of a plea agreement, has failed to truthfully answer questions during a Probation Department interview" (People v Ackley, 192 AD3d 1203, 1204 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). Still, a "sentencing court may not impose an enhanced sentence unless it has informed the defendant of specific conditions that the defendant must abide by or risk such enhancement, or give the defendant an opportunity to withdraw his or her plea before the enhanced sentence is imposed" (People v Anderson, 177 AD3d 1031, 1032 [3d Dept 2019] [internal quotation marks and citation omitted]; see People v Kiefer, 195 AD3d 1315, 1316 [3d Dept 2021]).
Here, County Court directed defendant "to appear at [P]robation when directed and cooperate with the preparation of that presentence investigation report . . . [a]nd answer all their questions honestly and in accordance with your plea here," otherwise the court would not be bound by the plea agreement, exposing defendant to the maximum legal sentence (compare People v Takie, 172 AD3d 1249, 1250 [2d Dept 2019], lv denied 33 NY3d 1109 [2019]). During his April 2022 presentence interview, defendant was asked whether he hit the victim with "any hammer," to which he responded, "maybe." Yet, during the plea allocution, defendant confirmed that he attempted to cause the victim serious physical injury by "striking him multiple times with a hammer." Defendant likewise asserted during the interview that the victim had been choking him and "he was defending himself." If true, defendant's statement, especially given the circumstances of the incident, makes out a colorable justification defense, which is inconsistent with his guilty plea (see Penal Law §§ 35.05, 35.15 [2] [a] [i]).[FN2] Finally, despite affirming during his plea allocution that he had not been coerced into pleading guilty, defendant not only told the presentence interviewer that counsel pressured him into accepting the plea offer because he was "getting a gift," he also emailed the interviewer the next day alleging that a Sheriff's Office investigator had appeared at his place of employment and told his girlfriend that he "better stop being stupid and take the deal." Given that defendant confirmed he understood the court's instructions, and defendant did not refute the accuracy of his interview statements during the enhancement hearing (see People v Dibble, 222 AD3d 1110, 1112 [3d Dept 2023]), the court did not err in imposing an enhanced sentence without permitting him to withdraw his plea (see People v Guzman-Hernandez, 135 AD3d 957, 957-958 [2d Dept 2016]).
Pritzker, Lynch, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant's related challenge to County Court's denial of his postallocution motion to invalidate the People's certificate of compliance and statement of readiness was forfeited by his guilty plea (see People v Smith, 217 AD3d 1578, 1578 [4th Dept 2023]; see generally People v Hansen, 95 NY2d 227, 230-231 [2000]). To the extent defendant seeks to invalidate the certificate to establish a statutory speedy trial violation, that issue is precluded by his unchallenged appeal waiver (see People v Wint, 222 AD3d 1050, 1051 [3d Dept 2023], lv denied 41 NY3d 945 [2024]).

Footnote 2: County Court did not specifically identify defendant's self-defense statement when it granted the People's enhancement application from the bench, though it noted during its oral ruling that it was listing only "a few of the examples" of defendant's inconsistent statements. The parties, however, raised defendant's self-defense claim at the enhancement hearing and cite to it in their appellate briefs.